UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KAREN JOHNSON, | : | Case No. 3:10-cv-352 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| SWIFT TRANSPORTATION COMPANY OF ARIZONA, LLC., *et al.*, | : | |
| Defendants. | : | |

**DECISION AND ENTRY: (1) DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 44); (2) DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT (Doc. 48); and (3) DENYING DEFENDANTS' MOTION TO STRIKE (Doc. 61) AS MOOT**

This civil case is before the Court on the Motion for Summary Judgment (Doc. 44) filed by Defendants Swift Transportation Co., Inc. ("Swift") and Jerry Kelly ("Kelly") (collectively referred to as "Defendants") and the Cross-Motion for Summary Judgment (Doc. 48) filed by Plaintiff Karen Johnson ('Plaintiff"). The Motions are fully briefed by the parties (Docs. 56, 58, 59) and are ripe for decision by the Court.

### I.  FACTS

This case arises from a motor vehicle collision that occurred in the early morning hours on March 12, 2007.  Immediately before the collision, Plaintiff was traveling eastbound on Interstate 90 ("I-90") as a passenger in a vehicle operated by her husband Kenneth Johnson ("Johnson") in Ashtabula County, Ohio.  At the time of the accident, Plaintiff and Johnson were New York residents and were traveling back to Buffalo, New York after dropping their child off at college in Springfield, Ohio.

At the same time, Kelly, a Missouri resident, was operating a tractor trailer westbound on I-90 in the course and scope of his employment with Swift. Kelly was transporting a load from New York to Missouri. At the time, Swift was incorporated in Nevada and headquartered in Arizona.[1]

At the point where the accident occurred, I-90 is a four lane interstate highway with two lanes traveling in each direction. Eastbound lanes and westbound lanes are separated by a grassy median. The parties do not dispute that the collision occurred after the vehicle driven by Johnson left its lane of travel in the eastbound side of the interstate, traveled through the median, and crossed into oncoming westbound traffic.

Following the accident, paramedics pronounced Johnson dead at the scene. The Ashtabula County Coroner concluded that Johnson died as a result of blunt trauma to the head, trunk and extremities. According to Plaintiff, however, Johnson appeared unresponsive and may have suffered a sudden medical emergency immediately before leaving the eastbound lanes of I-90. Postmortem testing revealed the presence of marijuana metabolites in Johnson's system.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*,

---

[1] Swift is currently incorporated in Delaware but still maintains its headquarters in Arizona.

477 U.S. 242, 247-248 (1986).  "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)).  "Weighing of the evidence or making credibility determinations are prohibited at summary judgment  -  rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Technologies, Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010) (citation omitted).  Instead, the party opposing summary judgment "must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." *Id*. (citation omitted).  In fact, Fed. R. Civ. P. 56(c) states that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the material cited do not establish the absence . . . of a genuine dispute[.]"  Where "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

Finally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'"  *Buarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted).  Instead, "[i]t is

3

the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome." *Id*. at 406. In other words, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id*.

### III. ANALYSIS

Defendants move for summary judgment arguing that Plaintiff cannot demonstrate negligence on the part of Kelly or Swift, and that any negligence on Kelly's part must be excused on the basis of the sudden emergency doctrine. Plaintiff, in her Cross-Motion for Summary Judgment, argues that Kelly was negligent because he was exceeding the speed limit at the time of the accident, and that any negligence on Johnson's part must be excused because he suffered a sudden medical emergency immediately before crossing left of center on the interstate. The parties also present arguments concerning marijuana found in Johnson's system postmortem and the applicable law governing the case with regard to loss allocation and damages.

#### A. **Sudden Medical Emergency**

Initially, the Court recognizes that there appears to be no dispute that, in the absence of a sudden medical emergency, Kenneth Johnson is negligent per se for traveling left-of-center on an interstate highway in violation of Ohio Rev. Code § 4511.25. See *Spalding v. Waxler*, 2 Ohio St.2d 1, 205 N.E.2d 890, 891 (Ohio 1965) (holding that "[a]ny unexcused failure to drive on the right side of the road as required by

4

Section 4511.25, Revised Code, constitutes negligence per se"). The question presented is whether Johnson's negligence is excused because Johnson allegedly suffered a sudden medical emergency just before crossing left of center on the interstate.

> As noted by the Supreme Court of Ohio:
>
> "legal excuse, precluding liability for injuries resulting from negligence per se in the failure to comply with a safety legislative enactment directing the manner of the operation of a motor vehicle on the public highways, must be something which makes it impossible to comply with the safety legislative enactment, something over which the driver has no control, an emergency not of the driver's making causing failure to obey the statute, or an excuse or exception specifically provided in the enactment itself."

*Smiddy v. Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212, 215 (Ohio 1987) (citing *Bush v. Harvey Transfer Co.*, 146 Ohio St. 657, 67 N.E.2d 851 (Ohio 1946). One such instance recognized by Ohio law is "[w]here the driver of an automobile is suddenly stricken by a period of unconsciousness which he has no reason to anticipate and which renders it impossible for him to control the car he is driving[.]" *Roman v. Estate of Gobbo*, 99 Ohio St.3d 260, 791 N.E.2d 422, 423 (Ohio 2003) (citing *Lehman v. Haynam*, 164 Ohio St. 595, 133 N.E.2d 97 (1956)). In such a situation, the unconscious driver "is not chargeable with negligence as to such lack of control." *Id*.

In this case, in an effort to prove that Johnson was unconscious immediately before crossing left of center on the interstate, and thus not chargeable with negligence, Plaintiff points solely to her own testimony that, upon first hearing the car leaving the road, she began screaming at and shaking Johnson, but got no response. Plaintiff described Johnson as "[s]tiff. Hands clenched to the steering wheel. No -- No motion or

5

anything.  Nothing.  He didn't look at me, look away.  Just sat there, cold." According to Plaintiff, Johnson did not appear to be sleeping.  Based on these facts, which Plaintiff describes as not disputed, Plaintiff argues that Johnson was unconscious immediately before traveling left of center, and, therefore, any negligence must be excused.

Defendants contend that Plaintiff fails to sufficiently demonstrate a sudden medical emergency defense because: (1) Plaintiff presents no expert medical testimony confirming the existence of a medical emergency; (2) Plaintiff's testimony contradicts her previous statement that her "memory of the whole evening is gone[,]" a statement made when applying for corporate insurance benefits; (3) Johnson's official cause of death, as determined by the Ashtabula County Coroner, was "blunt trauma to head, trunk and extremities[;]" and (4) Johnson had an intoxicating level of marijuana in his system at the time of his death and a reasonable jury could conclude that, even if Johnson was unconscious, marijuana intoxication may have contributed to Johnson's unconsciousness, thus, negating the defense.

Certainly, "the party asserting the sudden medical emergency defense bears the burden of proof with respect to the defense."  *McCoy v. Murray*, No. 4-08-36, 2009 WL 903936, *3 (Ohio App. Apr. 6, 2009) (citing *Roman*, 791 N.E.2d at 422; *Lehman*, 133 N.E.2d at 97).  The Sixth Circuit has acknowledged that, in situations where the moving party bears the burden of proof, a heightened standard for summary judgment applies wherein the moving party can prevail in demonstrating the absence of a genuine issue of fact only where the "evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).

6

Here, Plaintiff's testimony is not so powerful that a reasonable jury must conclude that Plaintiff was unconscious immediately before the vehicle left the roadway, crossed the median and into oncoming traffic. Plaintiff's testimony is subject to credibility concerns that must be weighed by the jury, namely the trustworthiness of her perception during those crucial moments before the collision. This is true especially in light of Plaintiff's previous statements that she had no memory of the entire evening. In addition, the competence of Plaintiff's testimony remains in dispute, namely, whether Plaintiff's conclusion that Johnson was unconscious is adequately supported by her observations.

Because a jury could reasonably discredit Plaintiff's testimony under the circumstances, her testimony alone is insufficient to establish, as a matter of law, the existence of a sudden medical emergency. Instead, the issue of sudden medical emergency is one that must be considered by a jury after weighing all of the evidence.

### B. Under the Influence of Marijuana

Plaintiff also contends that no evidence exists to show that Johnson was under the influence of marijuana at the time of the accident, and, therefore, Johnson cannot be found negligent per se on that basis.

Plaintiff first attacks the test results finding marijuana metabolites in Johnson's system. Plaintiff contends the testing is unreliable and not in compliance with Ohio Admin. Code 3701-53-05. While Plaintiff presents expert testimony from Fran M. Gengo, Pharm.D., who states that the testing is not reliable because of issues concerning postmortem redistribution and contamination, this testimony is not well-developed and is

conclusory.[2]  Nevertheless, reliability of the testing is an issue for the jury to consider. With regard to the contention that the laboratory drug testing must be excluded as not compliant with Ohio Admin. Code § 3701-53-05, Ohio courts have concluded that the regulation "applies only to criminal prosecutions[.]" *Meszar v. Bowen Implement Co.*, 122 Ohio App.3d 141, 701 N.E.2d 409, 416 (Ohio App. 1997).  Accordingly, Plaintiff's arguments in this regard are not well-taken.

Next, Plaintiff argues that issues of fact remain regarding the amount of marijuana metabolites found and whether the substances were found in Johnson's blood or his urine. While the Ashtabula County Coroner stated that 50 ng/mLs of marijuana metabolites were found in Johnson's blood, Dr. Gengo testifies that, based upon his review of the underlying testing, Johnson's urine was tested, not his blood.  In addition, Dr. Gengo concludes that the amount of marijuana metabolites found could be as low as 15 ng/mL.[3]

The Court has reviewed the underlying lab report and notes that it does not indicate whether the lab tested Johnson's blood or urine and does not specifically indicate the amount of marijuana metabolites found.  While the Court acknowledges the

---

[2] Dr. Gengo's affidavit in this regard simply states that his "review of the Quest Laboratory Report itself reveals that the "sample" tested was collected . . . almost nine (9) hours after the accident and after Mr. Johnson was pronounced dead."  (Doc. 48-2).  In addition, Dr. Gengo states that states that "[t]here is no information regarding how the urine and blood samples were obtained[,]" but provides no insight how such a fact impacts his analysis. (*Id.*)  Dr. Gengo concludes that, "[c]onsequently, because issues including postmortem redistribution and contamination the test results become scientifically unreliable in providing any insight as to the ante mortem concentrations."  (*Id.*)  Unfortunately, the issues of postmortem distribution and contamination are not explained any further.

[3] Defendants move to strike internet references relied upon by Plaintiff.  The Court did not consider the internet references in determining this issue on summary judgment, and instead, considered only the lab report provided by Plaintiff and the affidavit of Dr. Gengo, which Plaintiff does not challenge.  Accordingly, Defendant's Motion to Strike (Doc. 61) is **DENIED** as **MOOT**.

Ashtabula County Coroner's statement, issues of fact remain concerning the data underlying the Coroner's statement.  Accordingly, issues of fact remain with regard to the amount of marijuana metabolites found and whether marijuana metabolites were found in Johnson's blood or in his urine.

The parties also argue which subsection of Ohio Rev. Code § 4511.19(A)(1)(j) applies to the facts of this case.  Plaintiff contends that Ohio Rev. Code § 4511.19(A)(1)(j)(viii)(I) applies.  Under that section:

> [n]o person shall operate any vehicle . . . within this state, if, at the time of the operation . . . [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them, and, as measured by gas chromatography mass spectrometry, the person has a concentration of marihuana metabolite in the person's urine of at least fifteen nanograms of marihuana metabolite per milliliter of the person's urine[.]

Ohio Rev. Code § 4511.19(A)(1)(j)(viii)(I).

Defendants argue that Ohio Rev. Code § 4511.19(A)(1)(j)(vii) applies.  Under that section:

> [n]o person shall operate any vehicle . . . within this state, if, at the time of the operation . . . [t]he person has a concentration of marihuana in the person's urine of at least ten nanograms of marihuana per milliliter of the person's urine or has a concentration of marihuana in the person's whole blood or blood serum or plasma of at least two nanograms of marihuana per milliliter of the person's whole blood or blood serum or plasma.

Ohio Rev. Code § 4511.19(A)(1)(j)(vii).

Because the coroner's report and underlying lab testing reveals the presence of "marijuana metabolites," and because Ohio Rev. Code § 4511.19(A)(1)(j)(viii)(I) specifically concerns marijuana metabolites, that section applies.

9

Finally, Plaintiff argues that Johnson cannot be found in violation of Ohio Rev. Code § 4511.19(A)(1)(j)(viii)(I). Plaintiff contends that there is no evidence that Johnson was under the influence at the time of the accident, a finding Plaintiff contends is required in addition to a finding that Johnson had 15 ng/mL of marijuana metabolites in Johnson's urine. The Court disagrees with Plaintiff's contention that there is no evidence that Johnson was under the influence before the accident. Johnson's vehicle went drastically left of center on the roadway and Johnson apparently appeared unresponsive in the moments just the vehicle left the traveled portions of eastbound I-90. Such evidence is sufficient to create a genuine issue of fact on the issue of whether Johnson was under the influence at the time of the accident.

In light of the foregoing, genuine issues of material fact remain concerning the reliability of the drug testing, the results of the drug testing. and whether Johnson violated Ohio Rev. Code § 4511.19(A)(1)(j)(viii)(I)

### C. **Kelly's Negligence**

Plaintiff contends that Jerry Kelly forfeited the right of way and was negligent per se because he was operating his tractor-trailer in excess of the posted speed limit at the time of the collision.[4] Defendants argue that no evidence suggests that Kelly's speed was

---

[4] Plaintiff also argues that Kelly was negligent because officers cited Kelly for a brake equipment violation in violation of 49 C.F.R. § 393.48(a). However, a traffic citation itself is inadmissible as evidence of the underlying violation. *Brown v. Royalty*, 535 F.2d 1024, 1028 (8th Cir. 1970); *Conley v. Hayslip*, No. CA90 12 024, 1991 WL 106023, *1 (Ohio App. Jun. 17, 1991); 8 Ohio Jur. 3d Automobiles and Other Vehicles ' 639. Accordingly, because there is no admissible evidence in the record evidencing the underlying brake equipment violation other than the citation itself, the Court declines to find Kelly negligent as a matter of law with regard to the brake issue.

unreasonable under the circumstances or that Kelly's acts or omissions caused the accident.

The parties appear to agree that Kelly possessed the right of way if he was proceeding in a lawful manner. Plaintiff argues, however, that Kelly was not proceeding in lawful manner and, therefore, forfeited the right of way by operating his tractor-trailer in excess of the posted speed limit. To support these arguments, Plaintiff points to Kelly's statement to officers that he was operating his tractor trailer at approximately fifty-seven miles per hour at the time of impact, an estimate Kelly also gave during his deposition. The parties do not dispute that the speed limit for the tractor-trailer operated by Kelly was fifty-five miles per hour at the location where the accident occurred.[5] Based on the foregoing, there is evidence in the record showing the Kelly was traveling in excess of the posted speed limit at the time of the accident.

However, in Ohio, "evidence of speed in excess of a posted speed limit *alone* is *not conclusive* that a vehicle is proceeding unlawfully and has forfeited its right of way." *In re Neill*, 160 Ohio App.3d 439, 444, 827 N.E.2d 811 (Ohio App. 2005) (emphasis in original). In such a circumstance, the question becomes whether Kelly "was traveling at a speed reasonable under the conditions at the time of the accident." *Id*. (citing *City of Fremont v. Tilson*, No. S-92-25, 1993 WL 306564 (Ohio App. Jun. 30, 1994) (stating that "[a] vehicle may be proceeding lawfully notwithstanding the fact that it is exceeding the posted speed limit if its speed is reasonable given the surrounding conditions") *see also*

---

[5] Plaintiff also offers the affidavit of an expert in accident reconstruction who opines that Kelly was operating the tractor trailer in excess of fifty-five miles per hour at the time of the collision.

11

Ohio Rev. Code § 4511.21 (stating that "[n]o person shall operate a motor vehicle . . . at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions").

With regard to Kelly's negligence, in Ohio, "[t]he driver of a motor vehicle has the duty to drive at a reasonable and proper speed for the traffic, surface, width of the street, and other conditions." *Kaip v. Estate of Smith*, No. E-05-037, 2006 WL 205107, *2 (Ohio App. Jan. 26, 2006). "[A] fact-finder is not compelled as a matter of law to conclude that driving in excess of the speed limit . . . amounts to negligence per se." *Lewicky v. Accurate Blg. Systems, Inc.*, No. 72906, 1998 WL 842072 (Ohio App. Dec. 3, 1998). Instead, a "[v]iolation of speed restrictions merely constitutes prima facie evidence of negligence rather than negligence per se" *Id.*; *see* also Ohio Rev. Code § 4511.21(C). "The question of whether [a driver's] speed was reasonable is a question of fact for the jury." *Smith v. Pee Pee Twp.*, No. 2:04-cv-298, 2005 WL 2211260 (S.D. Ohio Sept. 7, 2005).

Based on the foregoing, Plaintiff's arguments that Kelly forfeited the right of way and was negligent as a matter of law are not well-taken. Accordingly, Plaintiff's Motion in this regard must be denied.

With regard to Defendants' Motion, again, "[t]he reasonableness of the rate of speed and whether or not excessive speed was a cause of an accident are questions of fact to be determined by the jury." *Belcher v. Wess*, No. 96APE04-400, 1996 WL 550381 (Ohio App. Sept. 30, 1996) (citations omitted); *see also Buchanan v. Mattingly*, No. 1:10–cv–856, 2012 WL 787381 (S.D. Ohio Mar. 9, 2012) (stating that "whether a

12

motorist's negligent operation of a vehicle was the sole or a contributory cause of a collision is an issue to be determined by the trier of fact"). Thus, the arguments asserted by Defendants with regard to Kelly's negligence concern issues of fact that must be resolved by the jury.

Finally, Defendants argue that, even assuming Kelly's negligence, any such negligence is excused by application of the sudden emergency doctrine. This defense "applies only where there was a sudden and unexpected occurrence of a transitory nature which demanded immediate action without time for reflection or deliberation and does not comprehend a static condition which lasted over a period of time." *Hatala v. Craft*, 165 Ohio App.3d 602, 847 N.E.2d 501, 504 (Ohio App. 2006) (citing *Miller v. McAllister*, 169 Ohio St. 487, 160 N.E.2d 231 (Ohio 1959)). "[T]o avoid liability for injuries resulting from a failure to comply with a safety statute regulating the operation of a motor vehicle on the public highways, the defendant must show that an emergency occurred, that the defendant did not create the emergency, and that it was impossible to comply with the safety statute due to the emergency." *Id*. (citing *Mapes v. Opper*, 9 Ohio App.3d 140, 458 N.E.2d 892 (Ohio App. 1983)).

Based upon the evidence presented, including the expert affidavit of Thomas Onions presented by Plaintiff, the Court concludes that issues of fact remain on the issue of sudden emergency. According to Kelly's own estimates, he may have been traveling as fast as fifty-seven miles per hour at the point of impact even after applying his brakes. Onions testifies that the physical evidence at the scene failed to reveal the presence of any skid marks made by Kelly's tractor-trailer, and therefore, there is a question as to

13

whether Kelly applied the brakes at all. Finally, Onions testifies that, based on his review of the evidence presented, Kelly "had a large window of opportunity to easily avoid this accident and failed to take reasonable measures to do so." While Defendants challenge Onions' opinion as running "afoul of all common sense," such a conclusion is one the jury must make.

Based on all of the foregoing, issues of fact remain with regard to whether Kelly was negligent, whether his actions or inaction caused the accident, and whether any such negligence is excused by the sudden emergency defense. Accordingly, Defendants' Motion in this regard must be denied.

### D. Independent Negligence of Swift Transportation

Defendants seek summary judgment on claims asserted against Swift for a number of arguments. The Court, however, focuses on Defendants' contention that "Plaintiff cannot provide a single piece of evidence showing that Defendant Swift was independently negligent" or that "Swift negligently maintained its vehicles." Plaintiff fails to address Swift's independent negligence, and, therefore, Plaintiff appears to abandoned claims of independent negligence against Swift. Judgment in favor of Swift is proper on this basis alone.

On the merits, to demonstrate a claim of negligent hiring, retention, training or supervision, Plaintiff must show: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate

14

cause of plaintiff's injuries." *Cooke v. Montgomery Cnty.*, 158 Ohio App.3d 139, 814 N.E.2d 505, 509 (Ohio App. 2004) (citing *Evans v. Ohio State Univ.*, 112 Ohio App.3d 724, 739, 680 N.E.2d 161 (Ohio 1996)); *see also Ford v. Brooks*, No. 11AP-664, 2012 WL 760741, *6 (Ohio App. Mar. 8, 2012) (finding that the elements required to prove a claim of negligent hiring and supervision also apply to a claim of negligent training).

Here, Plaintiff points to no evidence demonstrating Kelly's incompetence nor Swift's knowledge of any such incompetence. Accordingly, the Court grants summary judgment in favor of Swift on Plaintiff's claims of negligent hiring, retention, training and supervision. The same applies to any negligent maintenance claims. See *Heider v. Siemens*, No. 1-10-66, 2011 WL 705124, *9-10 (Ohio App. Feb. 28, 2011) (citing *Bloomer v. Van-Kow Enterprises*, No. 64970, 1994 WL 173651 (Ohio App. May 5, 1994) (affirming summary judgment in favor of defendant where there was no evidence that defendant "deviated from the regular maintenance schedule . . . or . . . knew of any facts which would make it reasonable to specifically check the emergency brake system when not otherwise instructed to do so by regular maintenance recommendations").

Based on the foregoing, Defendants' Motion for Summary Judgment concerning Swift's independent negligence is well-taken and is granted.

### E. Choice of Law

Finally, Plaintiff contends that New York law with regard to loss allocation and damages should govern this case. Plaintiff argues that the law of New York should govern loss allocation. According to Plaintiff, Ohio has no significant interest in the allocation of damages because no party is an Ohio domiciliary.

15

In cases in which this Court exercises jurisdiction on the basis of diversity, Ohio choice of law rules govern. *Logan Farms v. HBH, Inc. DE*, 282 F.Supp.2d 776, 788 n6 (S.D. Ohio 2003) (stating that "[s]ince this Court sits in Ohio, the Court must apply Ohio choice of law rules") (citing *Mill's Pride, Inc. v. Continental Ins. Co.*, 300 F.3d 701, 704 (6th Cir.2002)). Pursuant to Ohio law, "courts will apply the rule of lex loci delecti, the law of the place where the tort occurs, unless another state has a more significant relationship to the action." *Id*. (citing *Muncie Power Products, Inc. v. United Tech. Automotive, Inc.*, 328 F.3d 870, 873 (6th Cir.2003)).

In determining whether another state possesses a more significant relationship to a case, courts must consider "the factors set forth in the Restatement (Second) of Conflict of Laws § 145[,]" namely: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id*.; *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011); *Tanksley & Associates v. Willard Indus., Inc.*, 961 F.Supp. 203, 205 (S.D. Ohio 1997).

Courts "are guided in this analysis by general principles governing choice of law, including: the interests of each state in having its law applied; the relevant policies of the forum; certainty, predictability and uniformity of result; ease in the determination and application of the law to be applied; the promotion of interstate order; and the basic policies underlying the field of law." *MacDonald v. General Motors Corp.*, 110 F.3d 337, 342 (6th Cir. 1997) (citing Restatement (Second) of Conflict of Laws § 6).

16

Here, the first two factors weigh in favor of applying Ohio law. The injury occurred in Ohio and the conduct giving rise to the injury occurred in Ohio. Plaintiff's argument focuses on the third factor because Plaintiff and Johnson were domiciled in New York at the time of the accident.[6] However, Kelly lives in Missouri and Swift, insofar as it remains in the case on claims of respondeat superior, was incorporated in Nevada and is headquartered in Arizona. Nevertheless, Plaintiff places great significance on the contention that Swift regularly conducts business in New York and Kelly, at the time of the accident, was carrying a load he picked up in New York.

"[T]hat one of the parties is domiciled or does business in a given state will usually carry little weight of itself." Comments to Restatement (Second) of Conflict of Laws § 145 (1971). Where "the domicil and place of business of all parties are grouped in a single state[,]" such factor "is an important factor to be considered in determining the state of the applicable law." *Id.*

Here, the Court places little significance on the third factor. Although Swift conducts business in New York, there is no evidence that its business transactions in New York are any more significant than its business transactions in Ohio. Plaintiff cites no authority for the apparent assertion that Swift's business in New York is of utmost significance here simply because Plaintiff and Johnson both lived in New York at the time of the accident.

---

[6] Both parties note that Plaintiff lived in Ohio after the accident.

17

Generally, a corporate entity's most significant contact occurs in the state where it maintains its principal place of business.  *See* Comments to Restatement (Second) of Conflict of Laws § 145 (1971).  Courts have concluded that n entity's principal place of business, albeit for purposes of diversity jurisdiction, "should normally be the place where the corporation maintains its headquarters[.]" *Auxter v. Morgan Stanley Smith Barney LLC*, No. 1:10 CV 228, 2010 WL 767030, *3 (N.D. Ohio Mar. 5, 2010) (citing *Hertz Corp. v. Friend*, 559 U.S. 77 (2010)).  Here, the only fact alluded to by Plaintiff establishing Swift's principal place of business if the fact that Swift maintains its headquarters in Arizona.

Because only Plaintiff and Johnson were domiciled in New York at the time of the accident, the Court places little weight on third factor concerning domicile, residence, place of incorporation or place of business.  Instead, the Court focuses on the place where the injury occurred and where the conduct giving rise to the alleged injury took place.  Those factors weigh in favor applying Ohio law.  Accordingly, because no other state has a more significant relationship to this case, the Court intends to apply the law of Ohio with regard to the issues of loss allocation and damages.

### IV.  CONCLUSION

Based on all of the foregoing, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 44) with regard to claims of independent negligence against Defendant Swift.  The remainder of Defendants' Motion for Summary Judgment (Doc. 44) is **DENIED**.  Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. 48) is **DENIED** in all respects.  Defendants' Motion to Strike (Doc. 61) is **DENIED** as moot.

**IT IS SO ORDERED**.

Date:  March 4, 2013  *s/ Timothy S. Black*
Timothy S. Black
United States District Judge